UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUCK DRIVERS LOCAL UNION NO. 164, A/W
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,

   Plaintiff and Counter-Defendant,   Case number 05-73509

v.   Honorable Julian Abele Cook, Jr.

ALLIED WASTE SYSTEMS, INC d/b/a GREAT
LAKES WASTE SERVICES,

   Defendant and Counter-Plaintiff.

<u>ORDER</u>

  This is an action that arises under § 301(a) of the Labor Management Act, 29 U.S.C. § 185(a) and involves the Plaintiff, Teamsters Local Union 164 ("Teamsters"), and the Defendant, Allied Waste Systems Inc., doing business as the Great Lakes Waste Services ("Allied"), both of whom are parties to a Collective Bargaining Agreement which obligates them, among other things, to submit their employment disputes to final and binding arbitration. On November 17, 2005, the Teamsters filed a motion for a summary judgment, which - if granted - would confirm an arbitration award that provides for the reinstatement of, as well as the payment of limited back pay to, an Allied employee and union member, Keith Miller ("Miller"). Several days later (November 30, 2005), Allied filed its own motion for a summary judgment which seeks to vacate the portion of the arbitration award that applies to the reinstatement and payment of limited back pay to Miller.

I.

  This case pertains to a disciplinary action that was imposed upon Miller by Allied at its

1

facility in Adrian, Michigan.[1] Allied was, and continues to be, engaged in the business of collecting and disposing of non-hazardous solid waste material. In order to properly service its customers, Allied, among other things, purchases and maintains garbage trucks, and employs and trains persons to work as supervisors, dispatchers, drivers, and loaders. The Teamsters is the exclusive union representative for a specified classification of employees at the Adrian location which includes garbage truck drivers. Miller who, as a truck driver at the Adrian facility, was continuously represented by the Teamsters during all of the times that are relevant to this controversy.

On May 23, 2003, Allied and the Teamsters entered into a Collective Bargaining Agreement for the Adrian, Michigan facility which remains in effect until May 23, 2008. According to Article 29.1, this Collective Bargaining Agreement replaced all prior labor agreements that may have existed between the Teamsters and Laidlaw for the facility in Adrian.[2] Article 18.1 of the Collective Bargaining Agreement discusses the responsibilities of and the rights retained by Allied.[3] The parties also agreed upon the inclusion of Article 8.1[4] which indicates that the ability to impose

---

[1] The Adrian, Michigan facility was acquired by Allied in 1999 from Laidlaw Waste Services, Inc ("Laidlaw").

[2] Article 29.1 reads, "Scope: When the terms of this Agreement become effective, they shall supercede and render ineffective any past practices, addendum, letters of understanding, oral or written agreements as may now exist or may have existed."

[3] Article 18.1 contains, in pertinent part, the following language: "Retained Rights: Except as expressly and specifically limited or restricted by a provision of this Agreement, the Company has and shall retain the full right of management and direction of the Company and its operations. Such rights and responsibilities include, but are not limited to, . . . discharge and otherwise discipline employees for just cause . . . ; to make and enforce reasonable work and safety rules."

[4] Article 8.1 provides as follows: "Employer's Responsibility: The right to discharge and the maintenance of discipline shall be the exclusive right and responsibility of the Company except that the Company shall not discharge or otherwise discipline an employee without just cause."

discipline rests solely with the Company, which may not undertake any disciplinary action without the existence of just cause.

On April 4, 2005, Miller, while backing his vehicle on the left side of a dead end street in a residential neighborhood of Adrian, Michigan, entangled an overhead telephone line with the top of his truck that, in turn, caused the wires to be pulled from the house to which they were connected. The accident was investigated by two of Allied's supervisors who ultimately determined that Miller had violated the Company's "Zero Tolerance Rules,"[5] as well as its "Employee Safe Driving and Safe Work Practices."[6] According to Allied, it had disciplined other employees, who had violated its rules relating to the safe operation of the Company's motor vehicles.[7]

In imposing the disciplinary action against Miller, it was Allied's view that he had (1) engaged in a practice which is commonly known as "snaking"[8] and (2) moved his vehicle backward in the wrong lane of travel. As a result, Miller was cited for violating Zero Tolerance Rules 2, 4 and 7 for "picking up garbage in the left lane," "violating traffic laws," and "unsafe backing," respectively. In addition, Allied says that Miller also violated (1) Rule 20 of its "Employee Safe

---

[5] Allied's "Zero Tolerance Rules" state that "vehicles must remain in the right lane while picking up garbage."

[6] Allied's "Employee Safe Driving and Safe Work Practices" manual instructs its drivers to "avoid backing when possible[,]" and if backing is necessary, "to use caution when backing."

[7] On February 19, 2004, a mechanic, Tim Chamberlain, was discharged for his violation of the Company's "Zero Tolerance Rules." Similarly, a driver, Bob Binns, was discharged for violating Allied's "Zero Tolerance Rules" on March 9, 2004. Prior to the incident in this litigation, Miller was suspended for his failure to comply with the standards within the "Employee Safe Driving and Safe Work Practices" manual on February 27, 2004.

[8] "Snaking" occurs whenever a driver crisscrosses a street in order to cover both sides of the roadway in one pass.

Driving and Safe Work Practices" manual for "being involved in an accident which is determined to be preventable under Company safety standards," (2) Rule 28 for his "failure to comply with any safety rule or standard of the Company," (3) Rule 19 because of his "failure to observe traffic laws," and (4) Rule 29 for "operating Company equipment in a careless or unsafe manner." Citing these Rule violations as an offense that warranted a summary discharge, Miller was terminated from his employment on April 5, 2005.

On April 7, 2005, Miller filed a grievance, which was quickly rejected by Allied. After the Teamsters filed a demand for a formal arbitration, the parties met and agreed upon an arbitrator. On August 31, 2005, the arbitrator rendered a written award,[9] in which he denied in part and, granted in part, Miller's grievance. In his decision, the arbitrator set aside Miller's discharge, directed Allied to issue a written warning in lieu of the termination notice, and ordered him to be reinstated to his former position along with back pay and health benefits.

The parties are not clear as to which Rules were referenced in Article 8.2 of the Collective Bargaining Agreement that addresses the mandatory safe and work rules. According to Teamsters,

---

[9]Article 9.4(D) of the Collective Bargaining Agreement, which addresses the limitations of an arbitrator, provides that:

Whether the grievance is processed under the IBAC [Industrial Board of Arbitration Committee] or through formal arbitration, the arbitrator shall have no power or authority to amend, alter, or modify this Agreement, but shall be limited to deciding whether or not a violation of its expressed terms has been committed.
    The arbitrator shall have no power or jurisdiction to base the award on any alleged practice or oral agreement. The arbitrator shall have no power to establish wage scales, rates for new jobs or to change any wage. The arbitrator shall have no power to substitute his discretion for that of the Company in cases where the Company has retained discretion or the right to act under this Agreement.

the work rules that were referenced in Article 8.2[10] were incorporated into, and attached to, the Collective Bargaining Agreement of 1998, the terms of which were automatically renewed because neither party made any modifications to that particular section during their negotiations prior to the formation of the 2003 contract.  In essence, the "Mandatory Safety and Work Rules" that are currently in force are identical to those which were attached to the predecessor Collective Bargaining Agreement between the Teamsters and the Great Lakes Waste Services of Adrian, Michigan.  The arbitrator agreed with the Teamsters who argued that the "Mandatory Safety and Work Rules" were referenced in Article 8.2 and incorporated into the 2003 Collective Bargaining Agreement at the time of its signing.  As a consequence, it was his conclusion that these "Mandatory Safety and Work Rules" did not fall within the purview of Article 29 of the Collective Bargaining Agreement.

Under the work rules that had been attached to the 1998 contract, there were two categories of violations; namely, Section 1 which stated that "Non-Compliance with the following rules shall result in immediate discharge."  Section 2 which provided that "Non-Compliance with these rules shall result in disciplinary action."[11]

According to the arbitrator, the misadventures of Miller fell under the category of those offenses in Section 2.  Thus, it was the determination of the arbitrator that the imposition of the

---

[10] Article 8.2 contains the following language: "Mandatory Safety and Work Rules:   The Employer shall give at least one (1) warning notice with respect to violation of the Company's Mandatory Safety and Work Rules, under Section 2 of those rules, prior to discharge. No warning notice need be given for any violation of [the Rule] found in Section 1 of the Company's Mandatory Safety and Work Rules, prior to discharge, and the Employer may immediately discharge the employee.

[11] The 2003 Collective Bargaining Agreement did not include this language.

discipline upon Miller was not reasonable and did not warrant a summary dismissal.

II.

In 1986, the Supreme Court opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  At the same time, the language within Federal Rule of Civil Procedure 56© indicates that a motion for a summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."  Here, the burden is on the movant to demonstrate the absence of a genuine issue of a material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).  Thus, it is the responsibility of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Hence, a summary judgment must be entered if (1) the submitted evidence in support of the dispositive motion clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  Upon such a showing, the non-moving party must act affirmatively in order to avoid the

entry of a summary judgment. Fed. R. Civ. P. 56(e). Importantly, the presentation of a mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III.

The standard of review for the decisions of arbitrators is very deferential. *Eisenmann Corp. v. Sheet Metal Workers Int'l Ass'n Local No. 24,* 323 F.3d 375, 380 (6th Cir. 2003). As such, a judicial review of an arbitrator's award is very limited. *Anaconda Co. v. International Assoc. Of Machinists & Aerospace Workers,* 693 F.2d 35, 36 (6th Cir. 1982). A belief by the reviewing court that the arbitrator - if acting within his designated authority - may have committed a serious error is not a sufficient basis upon which to overturn the challenged decision. *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509 (2001). In those instances in which the parties have agreed to arbitrate their disputes, a reviewing court must not disturb the arbitrator's decision unless it fails to "draw its essence from the collective bargaining agreement." *Id.* (Quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960)). An award fails to "draw its essence from the collective bargaining agreement" if there exists a conflict with its express terms. *Kar Nut Products Co. v. Teamsters Local 337,* 1993 US App. LEXIS 20577, 8 (6th Cir. 1993). Thus, it is obligatory upon the court to vacate an award if the arbitrator failed to base his decision on an interpretation of the collective bargaining agreement. *United Steelworkers*, 363 U.S. at 597.

There are four ways in which the decision of an arbitrator may stray from the "essence" of

the collective bargaining agreement and, thus, become nugatory; namely, if it (1) conflicts with the express terms of the collective bargaining agreement; (2) imposes additional requirements that are not found in the collective bargaining agreement, (3) is not rationally supported by or derived from the collective bargaining agreement; or (4) is based upon general considerations of fairness and equity rather than on the exact terms of the collective bargaining agreement. *Eisenmann,* 323 F.3d at 380.

IV.

Typically, parties to a collective bargaining agreement are free to place restrictions upon the arbitrator's authority to construct a remedy. *Kar Nuts,* 1993 US LEXIS 20577 at 9. In the present case, Article 9.4(G) limits an arbitrator's ability to modify the discipline imposed by Allied.[12] In reviewing the record before him, the arbitrator determined that, given Miller's violation of the "Employee Safe Driving and Safe Work Practices,"[13] Allied had a justifiable basis upon which to discipline him. Having reached such conclusion, the arbitrator was precluded, by the express language of the Collective Bargaining Agreement, from modifying the discipline imposed upon Miller by his employer. The Collective Bargaining Agreement also provided that the authority of the arbitrator "shall have no power to substitute his discretion for that of the Company in any cases where the Company has retained discretion or the right to act under this Agreement"

---

[12] The last sentence of Article 9.4(G) reads,"It is understood and agreed that the degree of discipline up to and including discharge imposed for just cause shall be in the sole discretion of management and shall not be subject to modification by an arbitrator."

[13] In his opinion and award, the arbitrator stated that, "I find the Grievant did violate Section 2 of the Mandatory Safety and Work Rules, as well as the provisions of the Employer promulgated 'Employee Safe Driving and Safe Work Practices' handbook. Given the above, I conclude that just cause for a written warning has been established relative to the Grievant's involvement in the incident on April 4, 2005."

8

and that an arbitration award "shall be void insofar as the decision exceeds the authority of the arbitrator and passes upon matters not expressly made subject to arbitration under the terms of this Agreement."

Consequently, in altering the discipline that was given to Miller, the arbitrator exceeded the scope of his authority, and, in doing so, he violated the express terms of the Collective Bargaining Agreement. Accordingly, it is necessary to overturn the arbitrator's decision because he neither construed nor applied the contract as it existed. Therefore, to the extent that the award conflicts with the express terms of the Collective Bargaining Agreement, the award must be vacated.

V.

During the arbitration, two competing sets of safety rules were introduced. One set of work rules, dated 1998, indicated that Miller's behavior was a Section 2 violation which subjected him to a written warning. The second set of rules, dated 2003, contained a provision which indicated that Miller's actions were subject to immediate termination without making any reference to whether his conduct was a violation of Sections 1 or 2 of the Collective Bargaining Agreement. It was the determination of the arbitrator that the 1998 work and safety rules were applicable which effectively voided Miller's discharge.

Article 29.1 of the Collective Bargaining Agreement specifically provided that its terms, immediately upon becoming legally effective, would supercede any past practices, agreements or understandings As a consequence, the 1998 Collective Bargaining Agreement, as well as the "Mandatory Safety and Work Rules," became ineffective as of May 23, 2003. Thus, the terms of the more current Collective Bargaining Agreement are determinative in this cause. Although the arbitrator determined that Miller had violated the Company rules, he should not have considered

9

this violation in light of the 1998 rules.

Even if the 1998 rules were thought to be applicable and enforceable, Rule 7 requires an employee, who is involved in an accident to report the incident in writing to his supervisor prior to the termination of the work shift during which it occurred. According to Allied, Miller did not make a written report concerning the accident prior to the termination of his shift, and therefore, immediate discharge was appropriate.

VI.

Following its review of the record, this Court concludes that there are no genuine issues of a material fact in this cause. The terms of the Collective Bargaining Agreement are undisputed. Consequently, the arbitrator exceeded the scope of his authority in construing the grievance under the 1998 rules, in direct contravention of the terms of the parties' Collective Bargaining Agreement.

Accordingly, and for the reasons that have been set forth above, (1) Allied's motion for the entry of a summary judgment must be, and is, granted, and (2) the Teamster's motion for the entry of summary judgment, must be, and is, denied.

IT IS SO ORDERED.

Dated:   March 29, 2006                    s/ Julian Abele Cook, Jr.
         Detroit, Michigan                 JULIAN ABELE COOK, JR.
                                           United States District Judge


Certificate of Service
I hereby certify that on March 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

s/ Kay Alford
Courtroom Deputy Clerk